HEATHER RUSSELL WILDER, *et al.*,   )
                                    )
    Plaintiffs,                     )
                                    )
v.                                  )    No.:   3:11-CV-93
                                    )           (VARLAN/SHIRLEY)
HON. WILLIAM K. SWANN, *et al.*,    )
                                    )
    Defendants.                     )

## **MEMORANDUM OPINION**

This civil action, brought by plaintiff Heather Russell Wilder, proceeding *pro se*, is before the Court on seven pending motions to dismiss: Motion to Dismiss [Doc. 5], filed by John K. Harber ("defendant Harber"); Motion to Dismiss Complaint for Violation of Civil Rights [Doc. 7], filed by defendant Thomas P. Hanaway, Ph.D ("defendant Dr. Hanaway"); Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 [Doc. 9], filed by defendant R. Samuel English ("defendant English"); Motion to Dismiss [Doc. 13], filed by defendant Judge William K. Swann ("defendant Judge Swann"); Motion to Dismiss [Doc. 32], filed by Margaret B. Held ("defendant Held"); Motion to Dismiss Complaint [Doc. 36], filed by C. Scott Taylor ("defendant Taylor"); and Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 [Doc. 48], filed by defendant D. Vance Martin ("defendant Martin"). Plaintiff has responded in opposition to each of these motions [Docs. 12, 15, 16, 28, 35, 40, 49].[1] Defendants have

---

[1] As explained herein, the Court is treating plaintiff's motions to quash as response briefs to defendants' motions to dismiss.

filed reply briefs to plaintiff's responses [Docs. 22, 23, 24, 25, 26, 31]. Also before the Court is the Motion to Quash [Doc. 28], filed by plaintiff.

For the reasons stated herein, defendants' motions to dismiss [Docs. 5, 7, 9, 13, 32, 36, 48] will be **GRANTED**, and plaintiff's claims against defendants Harber, Dr. Hanaway, English, Judge Swann, Held, Taylor, and Martin will be **DISMISSED**. Plaintiff's motion to quash [Doc. 28] will be **DENIED** and treated as a response to defendant Judge Swann's motion to dismiss.

## I. Plaintiff's Motion to Quash

Magistrate Judge Shirley previously addressed several motions filed by plaintiff in this case, all similarly titled "Motion to Quash" [*See* Docs. 12, 15, 16, 27]. The magistrate judge found that the relief plaintiff requested in these motions was not within the scope of Rule 45 of the Federal Rules of Civil Procedure and denied the motions to the extent each moved the Court to quash various motions to dismiss [Doc. 27]. Noting, however, that *pro se* plaintiffs are allowed a certain degree of latitude in their filings, the magistrate judge allowed plaintiff's motions to remain on the record and held that these motions "will instead be treated as [plaintiff's] responses to the various motions to dismiss." [*Id.*, pp. 2-3].

Upon review of the instant motion to quash, the Court finds it to be substantially similar to the other motions to quash filed by plaintiff. Accordingly, the Court will treat the instant motion to quash [Doc. 28] in the same manner as Judge Shirley and it will be **DENIED**. The document, however, will be left on the record and will be treated as a response to defendant Judge Swann's motion to dismiss.

**II.    Facts**

In her complaint, plaintiff alleges that the Court has jurisdiction over her claims under fifteen federal statutes, including, but not limited to, 42 U.S.C. §§ 1981, 1983, 1986, 28 U.S.C. §§ 1331, 1332, and 18 U.S.C. § 371 [Doc. 1, pp. 2-3]. She alleges that defendants violated her civil rights and liberties and those of her children, and that "Defendants' behavior, actions and in-actions during the divorce and custody proceedings . . . denied both [plaintiff] and [her] three minor children of their constitutional rights and protections[,]" including their due process and equality rights [*Id.*, p. 1].

Plaintiff's factual allegations arise out of the divorce and custody proceedings, presided over by defendant Judge Swann, between plaintiff and her ex-husband, Joseph Chamblee Wilder,[2] in the Fourth Circuit Court for Knox County, Tennessee, Case No. 108931. Plaintiff filed for divorce in November 2007, after obtaining an order of protection against her ex-husband. From February 2008 throughout February 2009, in the course of the custody proceedings, defendant Dr. Hanaway performed a court-ordered clinical psychological evaluation of plaintiff and her ex-husband. Plaintiff alleges that defendant Dr. Hanaway was "over-extended" and should not have performed the evaluation. In November 2008, and again in September 2009, defendant Harber mediated plaintiff's divorce proceedings. Throughout the divorce and custody case proceedings, plaintiff was

---

[2]Joseph Chamblee Wilder, plaintiff's ex-husband, is also a defendant in this case.

represented, at different times, by defendants Martin, English, and Held, all attorneys. Her ex-husband was represented by defendant Taylor, also an attorney.

Plaintiff alleges that throughout the divorce and custody proceedings, each of her former attorneys failed to file motions against her ex-husband. She alleges that the mediation was improper, that it should not have occurred, that defendants Harber, English, and Taylor acted improperly during mediation proceedings and in violation of her due process rights, that defendant Harber was rude and sent her out of the room, that defendant English told her that she had to agree to the parenting plan, that she did so under duress, and that defendant Held refused to file an appeal on her behalf. In September 2009, plaintiff and her ex-husband agreed to a permanent parenting plan. Plaintiff also alleges that defendant Judge Swann refused to allow plaintiff's minor children to testify during the court proceedings, that he improperly allowed her ex-husband to violate the order of protection and other court orders, and that Judge Swann and defendants English and Taylor engaged in improper ex parte communications. Plaintiff's divorce was settled in October 2010. Plaintiff alleges, however, that issues remain pending in regard to the final judgment of divorce.

Defendants brought the instant motions to dismiss, arguing that plaintiff's claims against them should be dismissed pursuant to Rules 8, 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure. Generally, defendants argue that plaintiff's complaint fails to comply with Rule 8, fails to set forth facts establishing subject matter jurisdiction, and fails to state a claim for which relief may be granted.

4

### III. Analysis

#### A. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard, requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" in order to "'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 n.1 (6th Cir. 2004). "[D]etermining whether a complaint states a plausible claim is context-specific requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, — U.S.—,—, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

A party may move to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). In order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain allegations supporting all material elements of the claims. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). In determining whether to grant a motion to dismiss, all well-pleaded allegations must be taken as true and must be construed most favorably toward the non-movant. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. Nor will an "unadorned, the-defendant-

5

unlawfully harmed-me accusation." *Iqbal*, 129 S.Ct. at 1937. Rather, a pleading must "contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436-37 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

As noted, plaintiff has elected to proceed *pro se*. "[T]he allegations of a complaint drafted by a *pro se* litigant are held to less stringent standards than formal pleadings drafted by lawyers in the sense that a *pro se* complaint will be liberally construed in determining whether it fails to state a claim upon which relief could be granted." *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the "lenient treatment generally accorded to *pro se* litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Courts have not been "willing to abrogate basic pleading essentials in *pro se* suits." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citing cases). Liberal federal pleading standards do not permit litigants—even those acting *pro se*—to proceed on pleadings that are not readily comprehensible. *Cf. Becker v. Ohio State Legal Servs. Ass'n*, 19 F. App'x 321, 322 (6th Cir. 2001) (upholding district court's dismissal of *pro se* complaint containing "vague and conclusory allegations unsupported by material facts"); *Janita Theresa Corp. v. United States Attorney*, No. 96-1706, 1997 WL 211247, at *1 (6th Cir. Apr. 28, 1997) (upholding district court's dismissal of *pro se* complaint whose allegations were "far too muddled to serve as a basis for a proper suit").

A complaint may also be dismissed pursuant to Rule 12(b)(1) for lack of jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), a motion to dismiss based on lack of subject matter jurisdiction "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). In this case, defendants have asserted a facial attack on plaintiff's assertion of this Court's subject matter jurisdiction. *See RMI Titanium Co. v. Westinghouse Elec. Corp. ("RMI")*, 78 F.3d 1125, 1134-35 (6th Cir. 1996). If a Rule 12(b)(1) motion is predicated on a facial attack, "a district court takes the allegations in the complaint as true, which is a similar safeguard employed under [Federal Rule of Civil Procedure] 12(b)(6) motions to dismiss." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citation omitted). Because federal courts are courts of limited jurisdiction, *Kokkomen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), if the plaintiff's allegations establish federal claims, jurisdiction exists. *Gentek Bldg. Prods., Inc.*, 491 F.3d at 330.

**B.  Subject Matter Jurisdiction**

In considering whether to dismiss a complaint for lack of subject matter jurisdiction, the plaintiff bears the burden of proving the existence of subject matter jurisdiction. *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 970 (6th Cir. 2006). A plaintiff, even one who is proceeding *pro se*, must comply with the basis requirements set forth in Rule 8(a), which, among other requirements, require that a pleading contain "a short and plain statement of the grounds upon which the court's jurisdiction depends . . . ." *Bryant v. U.S. Atty. Gen.*, No. 1:06-CV-64, 2006 WL 2612730, at *1 (E.D. Tenn. Sept. 8, 2006); Fed. R. Civ. P. 8(a).

Additionally, a plaintiff is prohibited from "simply referenc[ing] a federal statute or constitutional provision in order to invoke the limited jurisdiction of a federal court." *Bryant*, 2006 WL 2612730, at *3.

Sections 1331 and 1332 set forth the statutory bases for this Court's subject matter jurisdiction. *See* 28 U.S.C. §§ 1331, 1332; *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006). Section 1332 applies to cases arising under diversity jurisdiction. *See* 28 U.S.C. § 1332. Upon the Court's review of the complaint, it appears that all parties named in the complaint reside or do business in the state of Tennessee. Accordingly, this is not a case in which diversity of citizenship may give rise to federal jurisdiction. Section 1331 governs "federal-question" jurisdiction, which requires a plaintiff to plead a colorable claim that arises under the U.S. Constitution or federal statutes enacted by Congress. *Id.* In her complaint, plaintiff references federal acts and a number of U.S. Code provisions as a basis for this Court's jurisdiction. Accordingly, the Court will review plaintiff's complaint and her factual allegations to see if subject matter jurisdiction is properly conferred on this Court under § 1332.

Construing the complaint in the most favorable light to plaintiff, the Court finds that the claims and allegations in the complaint do not meet the minimal, liberal pleading requirements of Rule 8(a) in regard to subject matter jurisdiction. From the face of the complaint, and plaintiff's responses to defendants' motions to dismiss, it appears that plaintiff's claims against these defendants arise out of the divorce and custody proceedings

8

involving plaintiff and the individuals involved in those proceedings. Thus, plaintiff's complaint attempts to invoke this Court's federal question jurisdiction to analyze and resolve claims related to state court proceedings and against a state judicial officer and private actors.

Such allegations are insufficient to establish this Court's subject matter jurisdiction over plaintiff's claims because simply referencing constitutional provisions or federal statutes is insufficient to establish subject matter jurisdiction. Furthermore, the section of plaintiff's complaint titled "Federal Jurisdiction" does not contain any allegation against any defendant that explains, within the requirements of Rule 8(a), why this Court has subject matter jurisdiction over plaintiff's claims. Plaintiff, even though she is proceeding *pro se*, must comply with these basic pleading requirements. *See Wells*, 891 F.2d 591. Because, as explained below, the Court finds that plaintiff has not explained the relationship of any of her claims or allegations against any defendant to the Constitutional provisions or federal statutes referenced in her complaint, the Court finds that it lacks subject matter jurisdiction over plaintiff's claims.

### C. Immunities

#### 1. Defendant Harber

Plaintiff alleges various claims against defendant Harber, who, according to her complaint, mediated her divorce. Among other allegations, plaintiff alleges that defendant Harber failed to act as a neutral party, did not treat her case as a domestic violence case, was rude and sent her out of the room, and that he forced her to sign the parenting plan under duress. Defendant Harber has moved to dismiss plaintiff's claims, submitting that, as a

9

certified mediator under both the Tennessee Supreme Court Rules and federal law, he is entitled to judicial immunity as a Rule 31 mediator [Doc. 5, p. 2].

Tennessee Supreme Court Rule 31, section 12, provides that the "[a]ctivity of Rule 31 Neutrals in the course of Rule 31 ADR proceedings shall be deemed the performance of a judicial function and for such acts Rule 31 Neutrals shall be entitled to judicial immunity." Tenn. Sup. Ct. Rule 31, § 12; *Savoie v. Martin*, No. 3:10-0327, 2010 WL 4982543, at *6 (M.D. Tenn. Dec. 2, 2010) (stating that Rule 31 affords mediators immunity for conduct undertaken in the course of Rule 31 ADR proceedings). All of plaintiff's allegations against defendant Harber relate to conduct in his capacity as a mediator in plaintiff's divorce proceedings in November 2008 and September 2009. Accordingly, because plaintiff has not challenged conduct by defendant Harber apart from conduct in his capacity as a mediator or Rule 31 Neutral, the Court concludes that defendant Harber is entitled to judicial immunity and plaintiff's claims against this defendant will be dismissed. *See Savoie*, 2010 WL 4982543, at *9.

### 2. Defendant Dr. Hanaway

In February 2008, as part of the custody proceedings underlying plaintiff's claims, the court ordered defendant Dr. Hanaway to prepare a psychological evaluation and report. Plaintiff alleges that defendant Dr. Hanaway was over-extended and that he should not have prepared the evaluation and report. She alleges that defendant Dr. Hanaway has a pattern of writing referrals against "mothers" and that he ignored her ex-husband's behavior during the evaluation.

10

In his motion to dismiss, defendant Dr. Hanaway asserts that he is entitled to judicial immunity for plaintiff's claims in his capacity as a court-appointed psychologist charged with preparing an evaluation and report for the court's use in divorce and custody proceedings. Plaintiff responds that defendant Dr. Hanaway is not entitled to immunity because he is governed by an ethical code under Tennessee law. Plaintiff also cites several cases that she argues stand for the proposition that immunity should not be extended to defendant Dr. Hanaway.

"Quasi-judicial immunity, a form of judicial immunity, has been extended to persons performing quasi-judicial functions." *Jackson v. Metro. Government of Nashville*, No. M2009-01970-COA-R3-CV, 2010 WL 2287639, at *4 (Tenn. Ct. App. Jun. 7, 2010). Quasi-judicial immunity applies to persons who are not judges but whose functions are an integral part of or intimately related to the judicial process. *Id.* The Tennessee court of appeals has addressed an assertion of quasi-judicial immunity by a court-appointed psychologist in regard to a plaintiff's claims arising out of a psychologist's preparation of an evaluation and report, pursuant to a court order, and concerning the plaintiff's family. *See Ghayoumi v. McMillan*, No. M2005-00267-COA-R3CV, 2006 WL 1994556, at *1-*2 (Tenn. Ct. App. July 14, 2006). In *Ghayoumi*, the court of appeals noted that, "[a]lthough no Tennessee court has held that a psychologist ordered to conduct an assessment of a family for the purpose of aiding the court in determinations of custody and visitation is entitled to immunity, the federal courts and numerous state courts have afforded immunity." Further,

11

> [F]ederal courts and numerous state courts have expanded the doctrine of absolute judicial immunity to include persons serving as an integral part of the judicial process on the reasoning that these persons must be able to act freely without the threat of a law suit. These authorities have convinced us the doctrine of immunity in Tennessee should protect a psychologist appointed by the court to assist the court in the evaluation and assessment of a family in a domestic dispute so the psychologist will be free from intimidation and harassment by a dissatisfied litigant.

*Id.* at *7. The *Ghayoumi* court analyzed the factual allegations underlying the plaintiff's claims and concluded that the psychologist was entitled to summary judgment because the court found "it appropriate to extend immunity to psychologists who are sued for services rendered in their capacity as agents of the court." *Ghayoumi*, 2006 WL 1994556, at *7-*8.

Plaintiff's allegations refer to defendant Dr. Hanaway as a court-appointed psychologist ordered by the court to prepare an evaluation and report to assist the court in determining issues related to the arrangements in plaintiff's custody proceedings. Upon review, plaintiff's claims against defendant Dr. Hanaway arise solely out of the court's order to defendant Dr. Hanaway. As described above, at least one Tennessee court of appeals, *Ghayoumi*, has found a similar situation to be an integral part of the judicial process so as to warrant the application of quasi-judicial immunity. *See Ghayoumi*, 2006 WL 1994556, at *7-*8. Having reviewed the cases cited by plaintiff in her response, the Court finds that these cases do not stand for the proposition that the doctrine of quasi-judicial immunity is

12

inapplicable to defendant Dr. Hanaway in this case.[3]  Accordingly, in light of the law set forth in *Ghayoumi* and the principles underlying the application of quasi-judicial immunity, the Court finds that defendant Dr. Hanaway is entitled to quasi-judicial immunity in regard to plaintiff's claims against him arising out of his conduct in preparing a psychological evaluation and report pursuant to the court's order.  Plaintiff's claims against defendant Dr. Hanaway will therefore be dismissed.

### D.     Defendant Judge Swann

Plaintiff has sought only injunctive relief against defendant Judge Swann, requesting that he either recuse himself or that the Court order that he be barred from any matter in which plaintiff is currently involved or will be in the future [Doc. 1, p. 20].[4]  In his motion to dismiss, defendant Judge Swann argues that plaintiff's requests for relief are barred under the doctrine of abstention and that a federal lawsuit is not the proper vehicle for asserting her claim for alleged judicial misconduct.  In response, plaintiff asserts that her request to have the Court require defendant Judge Swann to recuse himself is moot [Doc. 28, p. 3] because

---

[3]Plaintiff argues that *Ghayoumi* is inapplicable to this case because *Ghayoumi* involved domestic issues and was not a case that involved violations of a plaintiff's civil rights.  The Court disagrees that this distinction precludes the applicability of the immunity principle discussed in *Ghayoumi*.  *See id.*, 2006 WL 1994556, at *7 (discussing *Briscoe v. LaHue*, 460 U.S. 325 (1983) and the doctrine of absolute immunity as it has been applied to witnesses and other persons who are integral parts of the judicial process).

[4]Plaintiff acknowledges in her response to defendant Judge Swann's motion to dismiss that she has only sought injunctive relief against defendant Judge Swann [Doc. 28, p. 1 ("Plaintiff also asserts that while she only asked for Injunctive Relief, as allowed under federal law . . . .")].  *See Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (noting that "generally, a judge is immune from a suit for money damages").

13

defendant Judge Swann has since recused himself from all "contested matters" in response to plaintiff's motion for recusal filed in state court [Doc. 28-1, p. 23]. Plaintiff asserts, however, that her request for relief pertaining to defendant Judge Swann's recusal from all future and potential proceedings remains at issue.

In considering whether a plaintiff has established standing to seek injunctive relief, the U.S. Court of Appeals for the Sixth Circuit, quoting the Supreme Court, has noted that "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001) (denying the plaintiff's request for injunctive relief based on a state supreme court's previous imposition of sanctions against him) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). The Sixth Circuit noted that previous conduct might be "evidence bearing on whether there is a real and immediate threat of repeated injury," *id.* at 833 (quoting *Lyons*, 461 U.S. at 102), but, "where the threat of repeated injury is speculative or tenuous," a plaintiff will not have established standing to seek injunctive relief. *Id.*

Even assuming plaintiff has articulated a constitutional challenge in regard to defendant Judge Swann's involvement in her divorce proceedings, plaintiff's complaint contains no allegation that she will suffer any continuing, present adverse effects. Furthermore, plaintiff's complaint contains no allegation of any future lawsuit, let alone, one assigned to defendant Judge Swann, and the possibility of a future lawsuit is speculative and tenuous. Finally, the Court notes again that plaintiff's reference to more than fifteen federal

14

statues [Doc. 28, p. 2], and the assertion that she can prove facts to support her claims against defendant Judge Swann, is an insufficient basis to establish federal subject matter jurisdiction.

In sum, plaintiff's request that defendant Judge Swann recuse himself from her divorce proceedings is moot and plaintiff has not established a real and immediate threat of repeated injury so as to establish standing for an injunction barring his involvement in future proceedings. Accordingly, plaintiff's claim for injunctive relief against defendant Judge Swan will be dismissed.

### E. Failure to State Claims for Which Relief May be Granted

Plaintiff has alleged claims against four private attorneys—defendants Martin, English, Held, and Taylor—who have each moved for dismissal of plaintiff's claims against them. Defendants Martin, English, and Held represented plaintiff at various stages of her divorce and custody proceedings. Defendant Taylor represented plaintiff's ex-husband throughout these same proceedings [Doc. 9, ¶ 4; Doc. 33, ¶ 1; Doc. 37, pp. 2, 7].

According to the complaint, defendant Martin started representing plaintiff after she filed for divorce, in November 2007, and around the time she obtained an order of protection against her ex-husband. Plaintiff alleges that defendant Martin conspired with defendant Taylor against her, including during the November 2008 mediation and in the course of selecting defendant Dr. Hanaway to preform the psychological evaluation. She alleges that defendant English undertook her representation around May 2009 and represented her during the September 2009 mediation. She alleges that defendant English coerced her into signing

15

a parenting plan and mediation agreement, allowed the court to bully her, refused to file an appeal on her behalf, and, without plaintiff's knowledge, met with defendant Judge Swann and defendant Taylor. According to the complaint, defendant Held undertook her representation around June 2010, until around December 2010, at which time plaintiff fired defendant Held and proceeded *pro se*. Plaintiff alleges that defendant Held conspired with defendant Taylor to provide the court with incorrect information which led to the denial of financial relief for plaintiff's children, and that defendant Held refused to file an appeal of defendant Judge Swann's rulings. In regard to defendant Taylor, plaintiff alleges that he conspired and secretly met with plaintiff's former attorneys in opposition to plaintiff, that the mediation sessions he arranged were improper, that the outcomes of the mediation sessions and court hearings were predetermined, that he coerced plaintiff into the mediation agreements and parenting plans, and that he raised contempt charges against her.

Upon review of plaintiff's allegations in her complaint against these defendants and the statutes referenced therein, and construing such allegations in the light most favorable to plaintiff, the only possible claims plaintiff has attempted to allege against these defendants are claims for violations of her civil rights under § 1983.

Section 1983 creates a remedy for those denied "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 alone, however, does not create substantive rights. Rather,

> [Section] 1983 merely provides a mechanism for enforcing individual rights "secured" elsewhere, *i.e.*, rights independently "secured by the Constitution and laws" of the United States. "[O]ne cannot go into

> court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything."

*Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) (quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979)); *Johnson v. City of Detroit*, 446 F.3d 614, 618 (6th Cir. 2006). Furthermore, to succeed on a cause of action under § 1983, a plaintiff would need to establish the following: (1) a deprivation of a right secured by the Constitution or laws of the United States; (2) the deprivation was caused by a person acting under color of state law; and (3) the deprivation occurred without due process of the law. *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994). Because § 1983 is not itself a source of substantive rights, but only a method for vindicating federal rights conferred elsewhere, a plaintiff must also set forth specific constitutional grounds for asserting a § 1983 claim. *Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 492 (6th Cir. 2006); *see also Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

Even viewed in a light most favorable to plaintiff, and liberally construing her allegations as a *pro se* litigant, the Court concludes that she has not stated a § 1983 claim against defendants Martin, English, Held, or Taylor based on a deprivation of due process or civil rights violation because plaintiff has not identified any factual nature or substance of such claims. Furthermore, while plaintiff asserts in her responses to defendants' motions to dismiss that these defendants are state actors for purposes of her § 1983 claims, plaintiff has provided no facts to support this assertion.

17

In order for a private actor, such as private attorneys, to become "state actors" for purposes of § 1983, the private actor must be "jointly engaged with state officials in [a] prohibited action" and be "a willful participant in joint activity with the State or its agents." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (citation omitted). There are certain circumstances, however, in which a private person may become a "state actor" for purposes of § 1983. *Id.* "[A] private party can fairly be said to be a state actor if (1) the deprivation complained of was 'caused by the exercise of some right or privilege created by the State' and (2) the offending party 'acted together with or has obtained significant aid from state officials or because his conduct is otherwise chargeable to the State.'" *Id.* at 590-91 (quoting *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982)). The Sixth Circuit recognizes three tests under which private conduct is fairly attributable to the state:

> [T]he public function test, the state compulsion test, and the nexus test. The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state . . . . The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state. Finally, the nexus test requires a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state.

*Id.* at 591 (citing *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995)) (internal quotation marks and internal citations omitted). Plaintiff's allegations against defendants Martin, English, Held, and Taylor do not satisfy the public function or the state compulsion test because there are no allegations in her complaint that these attorneys were exercising powers traditionally reserved to the state or that the state coerced these attorneys to take a particular

18

course of action so that their choices were really those of the state.  Moreover, to the extent plaintiff has alleged misconduct arising out of the mediation proceedings, the Court cannot discern the role of the state in the proceedings involved in this particular case for purposes of a § 1983 claim.

Finally, in regard to the nexus test and plaintiff's allegations of misconduct in regard to the court hearings, ex parte meetings, and other communications, the Court does not find plaintiff to have stated a claim for relief pursuant to § 1983.  Plaintiff has alleged deprivations of her civil rights associated with these defendants' roles in the outcome of her divorce and custody cases.  While plaintiff clearly disagrees with the outcome of these proceedings, her allegations regarding the conduct of these defendants in conducting mediation and court hearings, even taking such allegations in the light most favorable to plaintiff, do not establish that their conduct was attributable to the state.  These attorneys were hired (and fired) by plaintiff or her ex-husband for the purpose of representation during divorce and custody proceedings, and plaintiff's allegations of conspiracy, misconduct, and ex parte meetings are no more than vague and conclusory allegations unsupported by material facts showing conduct with a sufficiently close relationship between the state and the defendants.

As such, plaintiff's factual allegations, when viewed in conjunction with her reference to causes of action under § 1983 and various Constitutional amendments, fail to provide notice or indication to the defendants, or to the Court, as to the facts or the substance of plaintiff's alleged due process violations or alleged deprivations of civil rights.  As such, the

Court cannot conclude that plaintiff has stated a claim for which relief may be granted under § 1983 and plaintiffs claims against defendants Martin, English, Held, and Taylor will be dismissed.

## IV. Conclusion

For the reasons set forth above, plaintiff's motion to quash [Doc. 28] will be **DENIED**, defendants' motions to dismiss [Docs. 5, 7, 9, 13, 32, 36, 48] will be **GRANTED**, and plaintiffs' claims against defendants John K. Harber, Dr. Thomas P. Hanaway, R. Scott English, Judge William K. Swann, Margaret B. Held, C. Scott Taylor, and D. Vance Martin will be **DISMISSED**. An appropriate order will be entered.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE